RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY:   KIM CHAMBERLAIN (031675)
       CHARLES E. TRULLINGER (018936)
       ANGELA D. LANE (035963)
       Kim.Chamberlain@mcao.maricopa.gov
       trullinc@mcao.maricopa.gov
       lanea@mcao.maricopa.gov
       Deputy County Attorneys

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8066
Facsimile (602) 506-4316
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 0003200

*Attorneys for Sheriff Paul Penzone,
Maricopa County and Kimberly Funchess*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Miriam Martinez, on behalf of the Estate of Steven Lemus; Arcelia Romero Martinez, statutory beneficiary, Angelica Tautimez, on behalf of statutory beneficiaries and surviving minor children, L.L. an J.L.,<br><br>                Plaintiff,<br><br>v.<br><br>Sheriff Paul Penzone, in his official capacity; Maricopa County, a public entity; Angelo Pearcy and Unknown Spouse Pearcy, a married couple; Richard Bonilla and Unknown Spouse Bonilla, a married couple; Kimberly Funchess and Unknown Spouse Funchess, a married couple; John and Jane Does 1-10,<br><br>                Defendants. | NO. CV23-00662-ROS-MTM<br><br>**DEFENDANTS SHERIFF PENZONE, MARICOPA COUNTY, AND KIMBERLY FUNCHESS' MOTION TO DISMISS AND PARTIALLY DISMISS** |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Sheriff Paul Penzone ("Penzone"), Maricopa County (or "the County"), and Kimberly Funchess ("Funchess") respectfully request that this Court dismiss and/or partially dismiss the Plaintiffs' claims against them, for failure to state a claim upon which relief can be granted.

The required LRCiv 12.1(c) certificate is filed separately from this Motion. The following Memorandum of Points and Authorities supports this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Background

**I.      Plaintiffs' allegations**

Plaintiffs allege that at 0640 hours on the morning of March 30, 2022, inmate Michael Schroeder pressed the button in his cell and told the control tower officer, Detention Officer Bonilla, "You'd better get somebody in here. I'm going to fuck this guy up," referring to his cellmate, inmate Steven Lemus. (Compl. ¶¶ 36-37). Detention Officer Bonilla contacted Detention Officer Pearcy and "told him only to start with the cells on Schroeder's side whenever he eventually did his first walk through the unit." (Compl. ¶ 38). Eight minutes later, at 0648 hours, inmate Schroeder called again and told Bonilla, "Come get the body." (Compl. ¶ 40). Detention Officer Pearcy then "went directly to the cell" and found Lemus unresponsive. (Compl. ¶¶ 41-42). Plaintiffs' Complaint names Detention Officers Bonilla and Pearcy, Physician's Assistant Kimberly Funchess, Sheriff Paul Penzone, and Maricopa County as Defendants.

The Complaint alleges that Defendants Funchess, Penzone, and Maricopa County are at least partially liable for inmate Lemus's death, as follows:

Defendant Funchess is a Correctional Health Services Physician's Assistant and employee of Maricopa County. (Compl. ¶ 12). The Complaint alleges that, on March 26, 2022, an MHP (mental health provider) named Brothers referred Schroeder to CHS for evaluation after Schroeder "had tied his towel in a knot, and he demonstrated how he could beat someone with it by hitting the knot on the table in his cell." (Compl. ¶¶ 31-32). P.A. Funchess performed an evaluation and discharged Schroeder back to the 4th Avenue Jail general population on March 27, 2022. (Compl. ¶ 33). The Complaint does not relate the outcome of this evaluation or allege that the evaluation was somehow deficient. Instead, it just alleges that PA Funchess should have discharged him back to the 4th Avenue Jail with an "order that he be kept in a cell alone." (Compl. ¶ 33). Absent from the Complaint are any pleaded facts suggesting that PA Funchess conducted a deficient evaluation, that she was aware of any facts that would establish a need for Schroeder to be housed alone, or that she made any findings during her evaluation suggesting that Schroeder needed to be housed alone or was a danger to others. (Compl. ¶ 33).

Defendant Penzone is named in his official capacity "for purposes of Plaintiffs' state law vicarious liability and federal municipal liability claims." (Compl. ¶ 9). As to Defendants Penzone and Maricopa County, the Complaint alleges that they were aware of a long history of deliberate indifference to the safety and security of Maricopa County Sheriff's Office ("MCSO") inmates, improper classification, and inappropriate housing decisions. The Complaint cites to four cases between 2010 – 2020 where an inmate killed his cellmate or a neighboring inmate. (Compl. ¶ 51).

//

## II.     Plaintiffs' Complaint

Plaintiffs filed a four-count complaint in state court on March 28, 2023, which the Defendants removed to federal court on April 19, 2023.

In Count 1, Plaintiffs allege a Fourteenth Amendment failure to protect a pretrial detainee claim against Detention Officer Richard Bonilla, Detention Officer Angelo Pearcy, and Physician's Assistant Kimberly Funchess.

In Count 2, Plaintiffs allege a Fourteenth Amendment loss of familial companionship claim against Bonilla, Pearcy, and Funchess.

In Count 3, Plaintiffs allege a state law wrongful death claim against all defendants.

And in Count 4, Plaintiffs allege a Fourteenth Amendment entity liability claim (a/k/a *Monell* claim) against Penzone and Maricopa County.

## **Standard of Review**

"Dismissal [under Rule 12(b)(6)] is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 8 does not demand detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A pleading that offers

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" does not suffice. *Id.* While a court may accept the factual allegations of a complaint as true, that tenet "is inapplicable to legal conclusions." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678).

## Argument

**I.    Plaintiffs have failed to state a claim against Defendant Funchess in Counts 1-3, and the Court should dismiss her entirely.**

### A.    Count One should be dismissed as to Defendant Funchess.

Count One alleges a Fourteenth Amendment failure to protect a pretrial detainee claim. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state a constitutional claim for failure to protect or threat to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were deliberately indifferent to those risks. *Id.* at 834. For a Fourteenth Amendment pretrial detainee failure to protect case, Plaintiff must show:

> (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2)

>those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). In addition, the mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

Count 1 states that Defendants "breached their duties under the Fourteenth Amendment" by a) housing Lemus with Schroeder "despite Schroeder's behavior"; b) allowing Schroeder to keep items in his cell that could be used as a deadly weapon; and c) failing to promptly respond to the cell when Schroeder "made it clear that he intended to harm" Lemus. *See* Compl. ¶ 54.

All these allegations pertain to the ways Schroeder was housed at the 4th Avenue Jail. As such, Plaintiffs fail to allege how Funchess, a CHS Physician's Assistant assigned to the Lower Buckeye Jail's Mental Health Unit (*see* Compl. ¶¶ 12; 32-33) would have been responsible for these detention decisions. While Plaintiffs allege that Funchess failed to issue an order that Schroeder be "kept in a cell alone," Plaintiffs fail to identify any

policy or practice permitting Funchess to issue such an order.

The powers and duties related to providing healthcare to inmates is separate from the powers and duties related to housing of jail inmates. A.R.S. § 11-291(A) grants the power and places the duty on the County, through its Board of Supervisors, to provide healthcare to inmates in the jails. And A.R.S. § 11-291(B) specifically empowers the Board of Supervisors to "employ physicians and other persons necessary to accomplish the purpose of this section." A.R.S. § 11-291(B). The Board of Supervisors chose to create CHS to carry out the Board's statutory duty to provide healthcare to inmates. *Conroy v. Avalos*, No. CV08-210-PHX-MHM (ECV), 2008 WL 1989788, at *2 (D. Ariz. May 5, 2008) (Because Maricopa County is responsible for providing medical care to county jail inmates, any action against the policies of CHS must be brought against the county). "Although Arizona places responsibility for operating county jails by law upon the county sheriff, the county is responsible for the provision of medical care to inmates." *Rogers v. Maricopa Cnty. Sheriff's Off.*, No. CV07-641-PHX-DGC (DKD), 2008 WL 898721, at *2 (D. Ariz. Mar. 31, 2008).

The Sheriff's department, on the other hand, maintains the jail and inmates within. The Sheriff shall "[t]ake charge of and keep the county jail, including a county jail under the jurisdiction of a county jail district, and the prisoners in the county jail." A.R.S. § 11-441(A)(5). "As administrator of the jail, the Sheriff is responsible for developing and implementing policies pertaining to inmate housing." *Cortez v. Cnty. of L.A.*, 294 F.3d 1186, 1190 (9th Cir. 2002) (implementing California law); *see also Flanders v. Maricopa Cnty.*, 203 Ariz. 368, 378 (2002) (the elected Sheriff is the final policy maker for Maricopa

County related to jail administration).

Not only does Plaintiffs' Complaint fail to allege any factual basis for the allegation that Funchess had the power and authority to issue a "house alone" order, such as a policy or procedure, but the Complaint fails to allege that Defendant Funchess was aware of any of the events that occurred between the time she last saw Schroeder on March 27, 2022 (Compl. ¶ 33), and when he killed his cellmate on March 30, 2022 (Compl. ¶ 40). For example, the Complaint does not allege: that Funchess was aware that inmate Schroeder allegedly told Detention Officer Pearcy, on an unspecified date, that Schroeder said he could use the tablet provided by the jail as a weapon (Compl. ¶ 34); that Funchess was aware inmate Lemus had been housed with inmate Schroeder on March 29, 2022 (Compl. ¶ 35); that Funchess was aware of the call to Detention Officer Bonilla to say, "You'd better get somebody in here. I'm going to fuck this guy up." (Compl. ¶ 37); or of any of the events that allegedly occurred after Schroeder made that call. (Compl. ¶¶ 38-40). The Complaint also does not allege that Funchess was aware of the encounters described by Officer Jacobson (Compl. ¶¶ 46-47) or Officer Perkins (Compl. ¶ 48).

Moreover, the Complaint does not allege that Schroeder assaulted any other inmate between the time he was incarcerated on March 22, 2022 (Comp. ¶ 21), and when he killed Lemus on March 30, 2022 (Compl. ¶ 44).

Without authority to order inmate Schroeder to be housed alone, and without any knowledge of the events alleged to have occurred before and after Funchess evaluated Schroeder on March 27th, Plaintiffs have not alleged sufficient facts to make out a failure to protect case against Funchess.

Plaintiffs cannot support a claim that Defendant Funchess deliberately disregarded a substantial risk of harm to Lemus. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (in evaluating a motion to dismiss, a court is not required to accept as true "unwarranted deductions of fact" or "unreasonable inferences"); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (a court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged"). Accordingly, Plaintiff's allegations are too sparse, vague, and conclusory to support a claim under § 1983 against Defendant Funchess.

**B. <u>Count Two should be dismissed as to Defendant Funchess.</u>**

Count Two alleges a Fourteenth Amendment loss of familial companionship claim. To succeed on a Fourteenth Amendment claim for loss of familial association a plaintiff must prove that the law enforcement officers' actions "shock the conscience." *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022). This analysis is more demanding than the Fourth Amendment excessive use of force reasonableness test. *Id.*; *see also Ochoa v. City of Mesa*, 26 F.4th 1050, 1056–57 (9th Cir. 2022) ("[T]he Fourteenth Amendment standard applicable to a claim by a relative demands more of such a plaintiff than a Fourth Amendment claim by the victim of an officer's actions.").

Courts use one of two tests to determine if the law enforcement officers' actions shock the conscience. If the officers had time to deliberate about how to respond to the situation, their actions shock the conscience if they acted with "deliberate indifference" to the harm caused. *Peck*, 51 F.4th at 893. If, on the other hand, the officers had to make a "snap judgment because of an escalating situation," then their actions shock the

conscience if they "acted with a *purpose to harm* unrelated to legitimate law enforcement objectives." *Id.* (emphasis in original) (citation omitted).

Fourteenth Amendment familial association claims are dependent on Plaintiffs being able to prove an underlying constitutional violation, such as the Fourteenth Amendment failure to protect a pretrial detainee alleged in the present case. "Recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation." *Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F.App'x 527, 528 (9th Cir. 2016); *see also Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004) ("Since the claim of familial interference is directly related to all the other constitutional claims appealed by [Defendant], the other claims form an integral part of the claim relating to familial interference.")

Because Plaintiffs' Complaint does not support a Fourteenth Amendment failure to protect a pretrial detainee case against Funchess, the Complaint likewise cannot support a Fourteenth Amendment familial association claim.

**C. <u>Count Three should be dismissed as to Defendant Funchess</u>**.

Count Three alleges a state law wrongful death claim under A.R.S. § 12-611, which first requires service of a legally sufficient and timely Notice of Claim. Under A.R.S. § 12-821.01(A), persons who have claims against a public entity or employee "shall file claims with the person or persons authorized to accept service…within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A). If a claim is not filed within one hundred eighty (180) days after the cause of action accrues, the claim "is barred and no action may be maintained thereon." *Id.*

During the parties meet and confer regarding the Motion to Dismiss, Plaintiffs admitted that they did not serve a Notice of Claim on Funchess. Out of an abundance of caution, Funchess attaches Exhibit A, a declaration from Jessica Cerio, the Correctional Health Services Legal Liaison, confirming that Funchess was never served with the required notice of claim. This Court can consider documents incorporated by reference in the complaint and take judicial notice of certain materials without converting this motion into one for summary judgment. *See* Fed. R. Evid. 201; *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003). Courts may take judicial notice of public records, *Lee v. City of L.A.,* 250 F.3d 668, 688-89 (9th Cir. 2001), and a Notice of Claim is a public record, *Phoenix Newspapers, Inc. v. Ellis*, 215 Ariz. 268, 272 (Ct. App. 2007). *See also Ellis v. Salt River Project Agric. Improvement & Power Dist.,* 24 F.4th 1262, 1268-69 (2022) (upholding district court's review of the notice of claim through judicial notice at the motion to dismiss stage "because the plaintiff has failed to satisfy a prerequisite to asserting *any* claim against a public entity under Arizona law." (emphasis in original)). Alternatively, the Court can incorporate the declaration by reference into the complaint, since the complaint must, by statute, rely upon having filed a timely Notice of Claim. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (the Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance"). Therefore, this Court should dismiss Funchess from Count 3 for failing to serve the statutorily-required Notice of Claim on

Funchess.

**II.   The Court should dismiss Penzone in Count 4, where he is named in his official capacity as the policy maker for Maricopa County.**

Defendant Sheriff Penzone is named in his official capacity, "for purposes of Plaintiffs' state law vicarious liability and federal municipal liability claims." (Compl. ¶ 9). However, there is no *respondeat superior* liability for causes of action brought pursuant to 42 U.S.C. § 1983.

> "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tort feasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *See* also *Bd. of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 415-16, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

*Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691, (1978). Despite the County's lack of actual control over the Sheriff's policies and customs, case law holds that the elected Sheriff is the final policy maker for Maricopa County related to jail administration. *Flanders v. Maricopa Cnty.*, 203 Ariz. 368, 378 (2002). However, it is redundant and legally unnecessary to sue both the municipal entity and its policymaker.

Thus, when a plaintiff brings an official-capacity lawsuit against a policy maker for an alleged unconstitutional policy, procedure, or custom, the policy maker should be dismissed and the municipality responsible for the policy should remain. "There is no

longer a need to bring official-capacity actions against local government officials, for under *Monell*, supra, local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, (1985).

Because Defendant Penzone cannot be vicariously liable for alleged constitutional claims brought against the individual defendants pursuant to 42 U.S.C. § 1983, and because it is redundant and legally unnecessary to sue Defendant Penzone for claims that his policies, procedures, or customs were unconstitutional under *Monell*, Defendant Penzone should be dismissed from Count Four.

**III.     The Court should dismiss Penzone and Maricopa County in Count 4, as Plaintiffs have failed to state a *Monell* claim against Penzone and the County.**

Count Four alleges a Fourteenth Amendment failure to protect a pretrial detainee claim against Maricopa County and Sheriff Penzone, as the County's policy maker. Because there is no vicarious liability of a municipality for the actions of its employees (*see* argument, supra), a plaintiff must demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit. A municipality may not be held liable for an alleged constitutional violation brought under 42 U.S.C. § 1983 unless its policy or custom caused the constitutional injury. *See Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit,* 507 U.S. 163, 166, (1993). A municipality causes a constitutional violation by implementing a policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Monell,* 436 U.S. at 694.

To establish Maricopa County's liability, Plaintiffs must show that (1) "[they were]

deprived of a constitutional right"; (2) the County "had a policy"; (3) "the policy amounted to a deliberate indifference to [his] constitutional right"; and (4) "the policy was the moving force behind the constitutional violation." *See Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001) (quotation marks omitted). Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Where, as here, the Complaint does not allege a formal policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1345 (9th Cir. 1992)).

> The custom must be so persistent and widespread that it constitutes a permanent and well settled city policy. Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy

*Id.* (internal quotations and citations omitted).

An isolated incident is ordinarily insufficient to establish a longstanding practice or custom. *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003) (quoting *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831(1985) ("To infer the existence of a city policy from the isolated misconduct of a

single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*"); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2012) (merely stating that municipal employees violated the plaintiff's constitutional rights and that this reflected a "custom or practice" of the municipal defendants does not plausibly suggest an entitlement to relief.)

The County also cannot be held liable for sporadic incidents. *See id.*; *see also Meehan v. Cnty. of L.A.*, 856 F.2d 102, 107 (9th Cir. 1988) (proof of two unconstitutional assaults on two different dates held insufficient to establish an official policy of harassment or of nonintervention).

Similarly, factually dissimilar instances of constitutional violations are ordinarily insufficient to establish a longstanding practice or custom. A pattern of similar constitutional violations is ordinarily necessary to demonstrate that policymakers were deliberately indifferent by continued adherence to the same approach that previously failed to prevent tortious conduct. *Connick,* 563 U.S. 51, 62 (finding that four *Brady* violations in ten years was insufficient to establish inadequate *Brady* training because the four prior *Brady* violations were different from the *Brady* violations alleged in the instant case.)

Plaintiffs' Complaint in the present case references four cases between 2010 and 2020 where one inmate killed another inmate. (Compl. ¶ 51(a) – (d)). The first example case is from June 4, 2010, when a black inmate killed his white cellmate after telling staff he could not be housed with an "Aryan." *Id.* In addition to occurring 12 years prior to the

present case, Plaintiffs' Complaint here does not allege that the Schroeder's killing was racially motivated or that Schroeder told staff he could not be housed with Lemus. The fourth case cited from May 26, 2020, is equally dissimilar in that it involved one inmate killing "a neighboring inmate" when staff left a "group of high-risk" inmates "unsupervised." This incident does not involve classification or housing decisions; rather it is alleged to have occurred due to lack of supervision.

The second and third example cases both occurred in 2014. The second case example is arguably similar in the way the killing occurred, but not the facts leading up to it. Plaintiffs' Complaint in the present case does not allege Schroeder had "a history of assaultive behavior, paranoia, and delusions." Telling detention officers how he could use his pants, a towel, or a tablet as a weapon, acting "a little crazy," and trying, but apparently failing, to bite a detention officer, is not the same as having a history of actual assaultive behavior. And, perhaps most distinguishing, there is no allegation that Lemus was a sex offender. As Plaintiffs' Complaint notes, sex offenders are housed alone for the safety and security of the sex offender, not for the safety of the cellmate. (Compl. ¶ 51(b)). No such issue exists here. Plaintiffs do not allege that Schroeder killed Lemus due to Lemus's status as a sex offender or other protected status such as race.

The third case example is also different in that there is no allegation that Schroeder had "brutally murdered [anyone] because he 'just felt like killing" before Lemus was housed with him. Plaintiffs' Complaint alleges that Schroeder threatened to injure other inmates, but it is completely silent as to any previous assaultive or violent behavior.

In short, the four cited prior instances of inmates killing another inmate in the jail

is insufficient to support a claim that Maricopa County had a definitive custom or practice that amounted to a deliberate indifference to Lemus's constitutional rights or that the custom or practice was the moving force behind the constitutional violation. Maricopa County, and its policy maker Sheriff Penzone, should be dismissed from Count Four.

## Conclusion

For these reasons, the Court should dismiss all of Plaintiffs' claims against Funchess in Counts 1-3; dismiss Penzone from Count 4; and dismiss Maricopa County from Count 4.

RESPECTFULLY submitted this 26th day of May 2023.

                    RACHEL H. MITCHELL
                    MARICOPA COUNTY ATTORNEY

BY:   */s/ Kim Chamberlain*
        KIM CHAMBERLAIN
        CHARLES E. TRULLINGER
        ANGELA D. LANE
        Deputy County Attorneys
        *Attorneys for Sheriff Paul Penzone, Maricopa County and Kimberly Funchess*

# **CERTIFICATE OF SERVICE**

Per Article II(D)(3) of the Electronic Case Filing Administrative Policies and Procedures Manual, "No certificate of service is required when a paper is served by filing it with the court's electronic-filing system." If the foregoing document is served on a party not listed in the Court's Case Management/Electronic Case Files (CM/ECF) System, service by paper copy will be indicated below or a certificate of service will be filed separately within a reasonable time after service.

*/s/D. Shinabarger*

S:\CIVIL\CIV\Matters\CJ\2022\Martinez (Lemus) v Penzone 2022-2949\Pleadings\Word\Motion to Dismiss\MC's MTD - Final.docx